1

2

3

4

5

6

7

8

9

10

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

11  | MARK SHANE THOMPSON, | Case No.  1:18-cv-00125-JLT-SAB (PC)

12  | Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING IN PART

13  | v. | AND DENYING IN PART DEFENDANTS' MOTION TO STRIKE SURREPLY AND

14  | A. GOMEZ, et al., | GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR

15  | Defendants. | SUMMARY JUDGMENT

16  | | (ECF Nos. 85, 89, 90, 91, 94, 96, 97)

17  | | **OBJECTIONS DUE WITHIN TWENTY-ONE DAYS**

18

19

20  **I.**

21  **INTRODUCTION**

22  Plaintiff Mark Shane Thompson, a state prisoner proceeding *pro se* and *in forma pauperis*,

23  brings this civil rights action pursuant to 42 U.S.C. § 1983.  This action is proceeding on Plaintiff's

24  claim for excessive force as asserted against Defendants Gomez, Weiss, Sazo, Gray, Busby, and

25  Johnson.  Presently before this Court is Defendants' motion for summary judgment and motion to

26  strike Plaintiff's unauthorized surreply.  (ECF Nos. 84, 94.)  For the reasons set forth herein, the

27  Court will recommend that Defendants' motion to strike be granted in part and denied in part, and

28  that Defendants' motion for summary judgment be granted in part and denied in part.

1

## II.

## PROCEDURAL BACKGROUND

Plaintiff initiated this action on January 25, 2018.  (ECF No. 1.)  On February 12, 2018, the Court screened the complaint and determined Plaintiff stated a potentially cognizable claim for excessive force against Defendants Gomez, Weiss, Sazo, Gray, Busby, Rodriguez and Does 1 and 2.  (ECF No. 8.)  Plaintiff was provided the option to amend the complaint or proceed on the identified cognizable claim for excessive force.  On March 5, 2018, Plaintiff elected to proceed on the original complaint.  (ECF No. 9.)

On June 26, 2018, Defendants moved to stay the litigation pending disposition of Plaintiff's criminal case, in which the charges against Plaintiff for battery on an officer and obstruction arose from the same use of force incident that is the subject of the instant litigation.  (ECF No. 28.)  The Court granted Defendants' motion and stayed the case.  (ECF No. 29.)  On December 18, 2018, the Court lifted the stay, following Defendants' report that Plaintiff was acquitted of all charges in the state court criminal case.  (ECF Nos. 33, 34.)

On January 18, 2019, the Court dismissed Defendant Rodriguez for failure to effectuate service pursuant to Federal Rule of Civil Procedure 4(m).  (ECF No. 38.)

The Parties attended a settlement conference on May 16, 2019.  (ECF No. 45.)  The case did not settle.

On December 31, 2019, Plaintiff filed a motion to amend the complaint to substitute the identity of Doe Defendant 1 as D. Johnson.  (ECF No. 58.)  The Court granted Plaintiff's motion, substituted Defendant Johnson for Doe 1, and dismissed Defendant Doe 2 for failure to identify and effectuate service pursuant to Rule 4(m).  (ECF No. 61.)

On July 8, 2021, Defendants moved for summary judgment as to all remaining Defendants.  (ECF No. 84.)  Plaintiff was granted an additional thirty days to respond and filed his opposition on September 1, 2021.  (ECF Nos. 87, 88, 89.)  Defendants timely replied, on September 8, 2021.  (ECF No. 90.)

Thereafter, Plaintiff filed a surreply to the motion for summary judgment and submitted an addendum of evidence not previously filed with his opposition brief.  (ECF Nos. 91, 92, 93.)

1    Defendants moved to strike the unauthorized surreply and new evidence.  (ECF No. 94.)  Plaintiff

2    opposed this motion, and Defendants replied.  (ECF Nos. 96, 97.)  The Court will first address

3    Defendants' motion to strike Plaintiff's unauthorized surreplies and evidence submittal, then turn

4    to the summary judgment briefings.

5                                                **III.**

6                                   **MOTION TO STRIKE**[1]

7        Plaintiff's surreply is a two-page handwritten document, filed on September 14, 2021.[2]

8    (ECF No. 91.)  Plaintiff also submitted two other filings — an "Evidence Submittal" addendum,

9    filed on September 23, 2021 (ECF No. 93), and a "CD of Evidence of Excessive Force," which was

10   lodged with the Court on September 28, 2021 (ECF No. 92).  Defendants characterize these as

11   additional surreply filings, but they appear to be more appropriately characterized as late-filed

12   exhibits to Plaintiff's opposition.  More specifically, the CD contains one excessive force injury

13   video and two photos.  The notarized cover page of the evidence addendum references the CD

14   lodged at ECF No. 92, and attaches several report summaries of witness interviews that were

15   prepared by an investigator at the Kern County Office of the Public Defender and pertain to

16   Plaintiff's related state criminal case.  (ECF No. 93.)  The addendum also attaches the California

17   Department of Corrections and Rehabilitation (CDCR) rules violation report (RVR) arising from

18   the incident that is the subject of this lawsuit.  (Id.)  Plaintiff's opposition to the summary judgment

19   motion does not include any evidentiary attachments, but it expressly refers to Plaintiff's excessive

20   force video CD and notes that Plaintiff's sister is in possession of the interview statements

21   generated by the Public Defender's Office.  (See ECF No. 89 at 1–2.)  Thus, the Court reasonably

22   infers Plaintiff intended to supplement his opposition with the identified evidence via supplemental

23   filing and construes ECF Nos. 92 and 93 as late-filed attachments to Plaintiff's opposition.

24   Regardless, the Court addresses the parties' arguments with respect to each of the filings herein.

25   _____

26   [1] With respect to both motions, for ease of reference, the Court will refer to the ECF pagination for the parties' attached
     exhibits.

27   [2] The Court notes that, pursuant to the prison mailbox rule, the surreply at ECF No. 91 is deemed filed as of September
     14, 2021, though it was docketed on September 23, 2021.  See Houston v. Lack, 487 U.S. 266, 274 (1988) (under the
28   "prison mailbox rule," a court document is deemed filed as of the date the prisoner delivers it to prison officials to be
     mailed to the court).

                                                  3

1

**A.     Surreply (ECF No. 91)**

2          As to the surreply, Defendants seek to strike the surreply because (1) it is unauthorized, (2)

3   Plaintiff did not seek leave to file it, and (3) no good cause exists to permit the surreply because

4   Plaintiff had ample time to oppose Defendants' motion.  (ECF No. 94.)  In opposition, Plaintiff

5   argues his indigency, lack of legal sophistication, and lack of access to a digital system prevented

6   him from hiring an attorney or legal assistant or properly submitting the at-issue filings.[3]  (ECF No.

7   96.)  Thus, Plaintiff's opposition to the motion to strike the surreply essentially amounts to a nunc

8   pro tunc request for leave to permit the filings.

9          The Local Rules for the Eastern District of California provide for a motion, an opposition,

10  and a reply.  See E.D. Cal. L.R. 230(l).  There is nothing in the Local Rules or the Federal Rules of

11  Civil Procedure that permit the filing of a surreply as a matter of right.  Indeed, the Court generally

12  views  motions  for  leave  to  file  a  surreply  with  disfavor.   See  Hill v. England,  No.

13  CVF05869RECTAG, 2005 WL 3031136, at *1 (E.D. Cal. 2005) (citation omitted).  However,

14  district courts have the discretion to either permit or preclude a surreply.  See JG v. Douglas Cnty.

15  School Dist., 552 F.3d 786, 803 n.14 (9th Cir. 2008) (district court did not abuse discretion in

16  denying leave to file a surreply where it did not consider new evidence in reply); U.S. ex rel. Meyer

17  v. Horizon Health Corp., 565 F.3d 1195, 1203 (9th Cir. 2009) (district court did not abuse discretion

18  in refusing to permit "inequitable surreply"), overruled on other grounds by U.S. ex rel. Hartpence

19  v. Kinetic Concepts, Inc., 792 F.3d 1121 (9th Cir. 2015).

20         The Court is mindful that, in this Circuit, courts are required to afford *pro se* litigants

21  additional leniency.  See, e.g., Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (quoting

22  Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010)) (holding when plaintiff "is *pro se*, particularly

23  in civil rights cases, [courts should] construe the pleadings liberally and . . . afford the [plaintiff]

24  the benefit of any doubt.")  Nonetheless, the leniency afforded *pro se* inmates need not extend to

25  permitting surreplies "as a matter of course," and the Court is not inclined to grant such leave absent

26  a showing of good cause.  See Garcia v. Biter, 195 F. Supp. 3d 1131, 1134 (E.D. Cal. 2016)

27

28  ---
[3] The Court acknowledges Plaintiff has moved for appointment of an attorney numerous times during this action, which have been denied thus far without prejudice.  (See ECF Nos. 48, 49, 71, 72.)

1  (denying motion for leave to file surreply due to lack of good cause).

2        Here, the Court is inclined to agree with Defendants that the failure to obtain leave to file

3  the surreply is without justification.  It is plain from the record that Plaintiff is perfectly capable of

4  seeking leave from the Court to file various documents.  (See, e.g., ECF No. 58 (motion for leave

5  to file an amended complaint).)  Further, Plaintiff's prior requests for extensions of time with

6  respect to other filings demonstrates his ability to seek extensions and awareness of filing deadlines.

7  (See, e.g., ECF Nos. 40, 54.)  Plaintiff's argument that he failed to seek leave to file the instant

8  surreply based on his lack of sophistication is therefore unpersuasive.

9        Furthermore, the Court has reviewed the surreply — which is handwritten and barely two

10  pages in length — and finds the arguments raised therein do not change the Court's analysis of

11  Defendants' summary judgment motion.  Plaintiff's argument that he never received a Rand notice

12  from Defendants, for example, is plainly refuted by the "Rand Warning" attached to Defendants'

13  summary judgment motion.  (ECF No. 84-11.)  The remainder of Plaintiff's arguments on surreply

14  consist of summarily disagreeing with the reply's characterization of the opposition as conceding

15  certain arguments by failing to address them or include contrary evidence.  These statements, at

16  most, bolster Plaintiff's allegations and opposition, but also do not alter the Court's findings based

17  on its application of the summary judgment legal standard.  Thus, the Court does not find good

18  cause exists to provide Plaintiff additional leniency to file the surreply.

19        Accordingly, Defendants' motion to strike the surreply should be granted and the surreply

20  should be stricken.

21        **B.**      **Evidence Addendum (ECF Nos. 92, 93)**

22        Whether Plaintiff should be afforded additional leniency with respect to the submission of

23  the CD and the evidence addendum is a closer call.

24        In addition to the aforementioned arguments, Defendants argue the CD and evidence

25  addendum were improperly submitted because: (1) the addendum was filed by Plaintiff's sister, a

26  non-attorney who was not authorized to submit documents to the Court on Plaintiff's behalf; (2)

27  Plaintiff failed to serve Defendants' counsel a copy of the CD, thus rendering the CD an improper

28  ex-parte communication in violation of Defendants' due process rights; and (3) the evidence must

be excluded pursuant to Rule 37(c)(1) because Plaintiff did not produce it during discovery.  (ECF No. 94.)  In opposition, Plaintiff argues he required assistance from his sister to procure the criminal case documents from the Public Defender's Office because he is incarcerated; moreover, his sister was unaware of the requirement to provide copies of the documents to Defendants as well as the Court.  (ECF No. 96.)

The Court is not unsympathetic to Plaintiff's circumstances which may contribute to many difficulties in timely procuring, serving, and filing documents.  More importantly, as mentioned, the Court is mindful that it must accord Plaintiff additional leniency as a *pro se* litigant.  Wilhelm, 680 F.3d at 1121.  Indeed, the Ninth Circuit has expressly held that a *pro se* inmate in a civil suit — as distinguished from "an ordinary *pro se* litigant" — is exempted from the rule that ordinary *pro se* litigants, like other litigants, must comply strictly with the summary judgment rules.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (holding courts should construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly).  Thus, the Court considers the parties' arguments while affording Plaintiff appropriate leniency due to his *pro se* inmate status.

To the extent the Court construes the evidentiary submissions at ECF Nos. 92 and 93 as late-filed exhibits in support of Plaintiff's opposition to the motion for summary judgment, Defendants' argument that the evidence should be stricken solely based on its date of submission is unpersuasive.  For similar reasons, the Court is not inclined to impose the harsh sanction of striking Plaintiff's evidence solely on the basis that a non-party assisted with the submission of documents to which Plaintiff did not have immediate access.  Wilhelm, 680 F.3d at 1121; Thomas, 611 F.3d at 1150.

Defendants' Rule 37(c)(1) argument, however, presents a greater challenge.  Rule 37(c) governs discovery sanctions arising from the failure to disclose, to supplement an earlier response, or to admit.  It provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

1    "Rule 37(c)(1) is a 'self-executing,' 'automatic' sanction designed to provide a strong

2    inducement for disclosure." Goodman v. Staples the Office Superstore, LLC, 644 F.3d 817, 827

3    (9th Cir. 2011) (citing Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th

4    Cir. 2001); Fed. R. Civ. P. 37 advisory committee's note to 1993 amendment).   "Two express

5    exceptions ameliorate the harshness of Rule 37(c)(1): The information may be introduced if the

6    parties' failure to disclose the required information is substantially justified or harmless." Yeti,

7    259 F.3d at 1106 (citing Fed. R. Civ. P. 37(c)(1)).   As Defendants note in their reply brief, the

8    burden of proving harmlessness is on the party facing sanctions. Id.   Nonetheless, the Ninth Circuit

9    gives "particularly wide latitude to the district court's discretion to issue sanctions under Rule

10   37(c)(1)." Id.

11   While Defendants do not specifically articulate whether they are seeking Rule 37 sanctions

12   arising from violations of Rule 26(a) or subsection (e), presumably the reliance arises from

13   subsection (e).[4]  Rule 26(e) pertains to the duty to supplement disclosures and discovery responses.

14   In relevant part, it provides that a party who has responded to discovery requests must, in a timely

15   manner, supplement or correct his disclosure or response if (1) he learns it is incomplete or incorrect

16   in some material respect, and (2) if the additional or corrective information has not otherwise been

17   made known to the other parties during the discovery process or in writing, or as ordered by the

18   court.  Fed. R. Civ. P. 26(e).  Defendants contend Plaintiff did not produce the CD or statements

19   from the Public Defender's Office during discovery, even though Defendants broadly requested

20   "All documents supporting your claims that [each Defendant] used excessive force against you,"

21   which would have included production of those items.  (Decl. of Arthur B. Mark III (Mark Decl.)

22   ¶¶ 2, 4, ECF No. 94-1 at 1–2.)  The excerpts of Defendants' written discovery requests, Plaintiff's

23   responses, and Plaintiff's deposition transcript attached to Defendants' motion support this

24   contention.  (ECF No. 94-1 at 3–59.)  Accordingly, Defendants have sufficiently demonstrated

25   Plaintiff's noncompliance with Rule 26(e), thus triggering application of Rule 37(c)(1).  Having

---

[4] Rule 26(a) addresses required disclosures: (1) initial disclosures, (2) expert disclosures, and (3) pretrial disclosures. Fed. R. Civ. P. 26(a).  None of these categories appear to apply to the instant matter, as (1) Plaintiff is exempt from initial disclosures because he is proceeding *pro se* and is incarcerated, Fed. R. Civ. P. 26(a)(1)(B); (2) none of the witnesses whose statements were proffered by Plaintiff are experts; and (3) no trial date is set in this matter, therefore pretrial disclosures, which must be made at least 30 days before trial, are not yet due.

met the threshold showing under Rule 26, the Court considers whether Plaintiff has met his burden to establish the late disclosure — here, the excessive force CD and Public Defender statements — was either substantially justified or harmless.  Yeti, 259 F.3d at 1106.

As to the first prong, Plaintiff seeks to justify the untimely submission of his evidence addendum by arguing his lack of resources, legal sophistication or representation, and incarcerated status prevented him from timely obtaining and disclosing the at-issue evidence prior to filing it in a belated oppositional surreply to Defendants' motion.  (See ECF No. 96.)  Plaintiff maintains his sister had to obtain the at-issue statements from the Public Defender's Office because of his incarceration; however, Plaintiff does not provide any explanation as to why he delayed so long in seeking her assistance in requesting the records.  As Defendants correctly note, Plaintiff's related criminal case commenced in June 2018 and completed in December 2018; therefore, Plaintiff had nearly three years to obtain (and subsequently produce) relevant records from that case.  Nor was Plaintiff unaware of the potential significance of those records.  To the contrary, in Plaintiff's responses to Defendants' requests for production, he identifies the "Superior Court of California, Kern County office of the clerk case No. MF012783A, Metropolitan Division" as supportive of his claims because "In that court Plaintiff . . . was unanimously found not guilty [of the battery on an officer and obstruction charges arising from the instant use of force incident]. . . ." (ECF No. 94-1 at 15–17, 38–39); during Plaintiff's deposition, he also highlights the use of force video and his criminal trial as evidence supportive of his claims (see ECF No. 94-1 at 47–48).

Plaintiff's lack of sophistication argument is also belied by the breadth of litigation in which he has engaged thus far for this matter.  Importantly, the Court advised Plaintiff of his duty to respond to discovery in its orders granting Defendants' motions to compel.  (ECF Nos. 53, 78.)  Thus, even according Plaintiff the utmost leniency in this matter, Plaintiff had sufficient means and time to obtain and produce all relevant records prior to opposing Defendants' July 8, 2021 motion for summary judgment, and he was well-warned of the consequences for failure to do so.  For these reasons, the Court cannot conclude sufficient justification exists to include the evidence addendum (ECF Nos. 92, 93).

Whether the late disclosure of the excessive force CD and Public Defender statements was

1  substantially harmless, however, is another matter. With respect to the CD, defense counsel

2  speculates the "cd that contains: one excessive force injury video and 2 photos" referenced in

3  Plaintiff's opposition and evidence addendum and lodged with the Court are likely "copies of the

4  video and photos taken by the prison in connection with the investigation of the incident at issue in

5  this case."[5] (Mark Decl. ¶ 2.) Counsel also represented to Plaintiff that Defendants already had a

6  copy of the use of force video during Plaintiff's deposition. (ECF No. 94-1 at 46–47.) Defendants'

7  attempt to pursue discovery sanctions based on the failure to disclose a CD that was created by the

8  prison and that Counsel represented to Plaintiff he was already in possession of, thus suggesting

9  Plaintiff need not produce it, is not well-taken. Accordingly, the Court finds the request to strike

10  the CD based on untimely disclosure is without merit and should be denied.

11       With respect to the statements created by the Public Defender's office, the Court

12  acknowledges Defendants may not have had direct access to the exact statements produced in

13  Plaintiff's addendum. Nevertheless, Defendants were aware of the value Plaintiff placed on the

14  results of the criminal trial because he stated as much during his deposition and in his responses to

15  Defendants' discovery requests. Moreover, Defendants were aware of all salient points of the

16  criminal trial — including the identities and testimony of the defense witnesses, having attended

17  and testified as witnesses themselves, and having received case information from the Deputy

18  District Attorney. (See ECF Nos. 28, 31, 32, 33 (motion to stay and status reports on progress of

19  criminal case); ECF No. 28-2 at 40 (criminal case docket details from state court website).) Finally,

20  the Court has reviewed and considered the "statements" at issue, which in actuality are not sworn

21  witness statements but summaries that were written by the Public Defender's investigator following

22  her interviews with various inmates *whose names were released to the Public Defender due to a*

23  *Pitchess motion.* See Fonseca v. Sysco Food Servs. of Ariz., Inc., 374 F.3d 840, 846 (9th Cir. 2004)

24  (late disclosure of evidence was harmless because the defendant had knowledge of the evidence).

25  In any event, the statement summaries do not constitute admissible summary judgment evidence

26  and did not impact the Court's findings on summary judgment. See, e.g., Sarno v. Douglas

---

[5] In fact, the Court has reviewed the video and photos on the CD submitted by Plaintiff, and confirms the contents of
the CD are, unsurprisingly (given Plaintiff's *pro se* incarcerated status), exactly what Defense counsel "speculated"
they would be.

9

1   Elliman–Gibbons & Ives, Inc., 183 F.3d 155, 160 (2nd Cir. 1999) (a "hearsay assertion that would

2   not be admissible if testified to at trial is not competent material for a Rule 56 affidavit.").  On this

3   record, the Court concludes the late disclosure of the Public Defender "statements" from Plaintiff's

4   criminal case was substantially harmless.  Yeti, 259 F.3d at 1106.

5       For the foregoing reasons, the Court shall recommend Defendants' motion to strike (ECF

6   No. 94) be granted as to the surreply (ECF No. 91) and be denied as to Plaintiff's evidence

7   addendum (ECF Nos. 92, 93), and that only the surreply at ECF No. 91 be stricken.

8                                      **IV.**

9                         **MOTION FOR SUMMARY JUDGMENT**

10      Plaintiff brings an excessive force claim against Defendants Gomez, Weiss, Sazo, Gray,

11  Busby, and Johnson.  (See ECF Nos. 8, 9, 10, 11, 12, 35, 38, 58, 59, 61.)  Plaintiff claims Defendants

12  used excessive force during a takedown in front of the chapel and during his escort to

13  Administrative Segregation thereafter.  Defendants seek summary judgment as to the entire action.

14  (ECF No. 84.)

15      **A.    Legal Standard**

16      The purpose of summary judgment is to "pierce the pleadings and assess the proof in order

17  to see whether there is a genuine need for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp.

18  (Matsushita), 475 U.S. 574, 587 (1986).  Summary judgment is appropriate when the moving party

19  demonstrates no genuine issue as to any material fact exists and the moving party is entitled to

20  judgment as a matter of law.  Fed. R. Civ. P. 56(a); Adickes v. S.H. Kress & Co., 398 U.S. 144,

21  157 (1970).  "In cases that involve . . . multiple causes of action, summary judgment may be proper

22  as to some causes of action but not as to others, or as to some issues but not as to others, or as to

23  some parties, but not as to others."  Conte v. Jakks Pac., Inc., 981 F. Supp. 2d 895, 902 (E.D. Cal.

24  2013) (quoting Barker v. Norman, 651 F.2d 1107, 1123 (5th Cir. 1981)); see also Robi v. Five

25  Platters, Inc., 918 F.2d 1439 (9th Cir. 1990); Cheng v. Comm'r Internal Revenue Serv., 878 F.2d

26  306, 309 (9th Cir. 1989).  A court "may grant summary adjudication as to specific issues if it will

27  narrow the issues for trial."  First Nat'l Ins. Co. v. F.D.I.C., 977 F. Supp. 1051, 1055 (S.D. Cal.

28  1977).

Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett (Celotex), 477 U.S. 317, 323 (1986). To carry its burden of production on summary judgment, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc. (Nissan Fire), 210 F.3d 1099, 1102 (9th Cir. 2000). "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." Nissan Fire, 210 F.3d at 1102–03; see Adickes, 398 U.S. at 160. If, however, a moving party carries its burden of production, the burden then shifts to the nonmoving party to establish that a genuine issue as to any material fact actually does exist. Matsushita, 475 U.S. at 585–87.

In the endeavor to establish the existence of a factual dispute, the nonmoving party need not establish a material issue of fact conclusively in its favor but need only show the claimed factual dispute "require[s] a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288–89 (1968). Nevertheless, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Similarly, the nonmoving party may not merely rely upon the mere allegations or denials of its pleadings or "show that there is some metaphysical doubt as to the material facts," but must instead tender evidence of specific facts in the form of affidavits and/or admissible discovery material, in support of its contention that the dispute exists. Matsushita, 475 U.S. at 586; Est. of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting Fed. R. Civ. P. 56(c), (e)). Finally, the nonmoving party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson, 477 U.S. at 248, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

11

1   nonmoving party.  Id. at 251–52.

2           In resolving the summary judgment motion, the Court examines the pleadings, depositions,

3   answers to interrogatories, and admissions on file, together with any applicable affidavits.  Fed. R.

4   Civ. P. 56(c); SEC v. Seaboard Corp., 677 F.2d 1301, 1305–06 (9th Cir. 1982).  In judging the

5   evidence at the summary judgment stage, the Court may not make credibility determinations or

6   weigh conflicting evidence.  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007)

7   (citation omitted).  The evidence of the nonmoving party is to be believed, and all reasonable

8   inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the

9   nonmoving party.  Anderson, 477 U.S. at 255; Comite de Jornaleros de Redondo Beach v. City of

10  Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011).  Thus, the Court determines only whether there

11  is a genuine issue for trial.  Thomas, 611 F.3d at 1150 (citations omitted).  Nevertheless, mere

12  disagreement as to legal implications of the material facts does not bar summary judgment.  See

13  Beard v. Banks, 548 U.S. 521, 530 (2006).  Rather, the inquiry is "whether the evidence presents a

14  sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

15  must prevail as a matter of law."  Anderson, 477 U.S. at 251–52.  "If the nonmoving party fails to

16  produce enough evidence to create a genuine issue of material fact, the moving party wins the

17  motion for summary judgment."  Nissan Fire, 210 F.3d at 1103; see also Celotex, 477 U.S. at 322.

18          In arriving at this Findings and Recommendation, the Court carefully reviewed and

19  considered all arguments, points and authorities, declarations, exhibits, statements of undisputed

20  facts and responses thereto, if any, objections, and other papers filed by the parties.  Omission of

21  reference to an argument, document, paper, or objection is not to be construed to the effect that this

22  Court did not consider the argument, document, paper, or objection.  This Court thoroughly

23  reviewed and considered the evidence it deemed admissible, material, and appropriate.

24  ///

25  ///

26  ///

27  ///

28  ///

12

1   **B.      The Parties' Evidence**

2   1.      Plaintiff's Verified Allegations (ECF Nos. 1, 61.)[6]

3   The events at issue in this complaint took place while Plaintiff was housed at California

4   Correctional Institution ("CCI") in Tehachapi.  (ECF No. 1 at 4–5.)

5   On May 30, 2017, at approximately 5:30 p.m., Plaintiff was standing in line waiting to be

6   searched for admission to Facility AB Chapel.  (Id. at 6.)  When Plaintiff reached the front of the

7   line, Defendant Correctional Officer Gomez called Plaintiff over to him to be searched.  (Id.)

8   Plaintiff walked to where Gomez was standing, stood with his back to Gomez, placed his hands on

9   his head and interlaced his fingers, and spread his legs approximately three feet apart so Gomez

10  could search him.  (Id. at 6–7.)  Gomez placed his right hand over Plaintiff's hands.  (Id. at 7.)

11  While conducting the clothed body search, Gomez whispered to Plaintiff that "he hates Muslims,

12  he hates Niggers, and that he hates Hilary Clinton."  (Id.)  Plaintiff did not respond to Gomez's

13  comments.  (Id.)

14  Gomez then ordered Plaintiff to widen his stance and Plaintiff did as ordered.  (Id.)  Gomez

15  then ordered Plaintiff again to widen his stance and Plaintiff did so.  (Id.)  Gomez thereafter ordered

16  Plaintiff a third time to widen his stance, but Plaintiff could not do so because Plaintiff was almost

17  in a "splits position" and was in pain.  (Id.)  While Plaintiff was in this position, Gomez attacked

18  him from behind by slamming Plaintiff to the concrete pavement in front of the chapel.  (Id.)

19  Plaintiff could not break his fall because of his stance.  (Id.)  Defendant Correctional Officers Weiss,

20  Sazo, and Gray attacked Plaintiff while he was on the ground in front of the chapel.  (Id. at 8.)

21  Weiss punched Plaintiff and applied pressure with a strong arm and hand grinding Plaintiff's head

22  and face into the pavement.  (Id.)  Sazo and Gray jumped on Plaintiff as he was being controlled

23  by Gomez and Weiss.  (Id. at 8–9.)  Sazo also punched Plaintiff approximately three times in the

---

[6] Plaintiff's complaint (ECF No. 1), as amended on February 24, 2020 (ECF No. 61), is signed under the penalty of perjury.  Therefore, his contentions are "consider[ed] as evidence in his opposition to summary judgment" to the extent they are based on Plaintiff's personal knowledge of specific facts which are admissible in evidence.  Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (citing McElyea v. Babbitt, 833 F.2d 196, 197 (9th Cir. 1987) (verified pleadings admissible to oppose summary judgment); Johnson v. Meltzer, 134 F.3d 1393, 1399–1400 (9th Cir. 1998) (verified motions admissible to oppose summary judgment); and Schroeder v. McDonald, 55 F.3d 454, 460 n.10 (9th Cir. 1995) (pleading counts as "verified" if the drafter states under penalty of perjury that the contents are true and correct); see also Covington v. Fairman, 123 Fed. App'x 738, 740 (9th Cir. 2004) (treating plaintiff's verified complaint as an opposing affidavit on summary judgment).

1    lower back area, causing pain.  (Id. at 8.)  Gray stretched and twisted Plaintiff's right arm.  (Id. at

2    9.)

3          Defendant Correctional Sergeants Busby and Johnson were located approximately five feet

4    away from Plaintiff during the attack by the other officers, but they failed to intervene and instead

5    just watched.  (Id. at 9, 13.)

6          As a result of this incident, Plaintiff claims he suffered pain, abrasions and swelling and

7    redness in his facial and head area, pain and redness in his lower back region, pain in his right

8    shoulder, and psychological damages.  (Id. at 8–9, 11–13.)

9          Thereafter, Plaintiff was restrained in mechanical restraints and escorted to medical.  (Id. at

10   9.)  Then Plaintiff was escorted to solitary confinement [Administrative Segregation] by two non-

11   party officers led by Johnson.  (Id. at 9–10.)  Once Plaintiff entered the confinement building, the

12   nonparty officers slammed Plaintiff face first into a wall, then pushed him against the wall, while

13   Johnson again watched.  (Id. at 10.)

14         Thereafter, Plaintiff was issued an RVR for battery on Gomez, which was fabricated by

15   Gomez, Weiss, Busby, Sazo, and Gray.  (Id. at 11.)  The rules violation report was never

16   adjudicated, however, at some date Plaintiff was found not guilty of battery.  (Id.)

17         2.    Defendants' Evidence Submitted on Summary Judgment

18         In support of their motion for summary judgment, Defendants filed a statement of

19   undisputed facts pursuant to Local Rule 260(a).  (ECF No. 84-2.)  The Defendants' statement of

20   facts paints a different picture of the events occurring on May 30, 2017:

21         Around 5:30 p.m. on May 30, 2017, Plaintiff was released to attend Ramadan services in

22   the Facility B chapel.  (Id. at ¶ 9.)  Weiss and Gomez were working at the chapel as Security Patrol

23   Officers 3 and 4, respectively.  (Id. at ¶¶ 14, 15.)  Gomez was conducting clothed-body searches of

24   inmates on the patio area in front of the chapel before they entered the chapel for services, while

25   Weiss checked names on the master list for those inmates signed up for Ramadan services.  (Id.)

26   Sazo was also on the patio area, providing coverage for Ramadan services.  (Id. at ¶ 16.)  Neither

27   Gray nor Johnson were working at the Facility B chapel at the time of the incident.  (Id. at ¶¶ 17,

28   18.)  Busby was working on B-yard as the Program Sergeant.  (Id. at ¶ 19.)

When Plaintiff was released for Ramadan services, he was upset about a guilty finding and discipline imposed on him in an RVR hearing that had occurred earlier that day.  (Id. at ¶ 20.) While standing in line to enter the chapel, Plaintiff yelled "whoever heard this RVR is a bitch." (Id. at ¶ 21.)  At that time, approximately ten to twenty other inmates were on the yard.  (Id. at ¶ 22.)

Gomez called Plaintiff to be searched and instructed him to place his hands on his head, and told him to widen his stance so Gomez could conduct the search.  (Id. at ¶ 24.)  Plaintiff did not comply with Gomez's order but instead stated "Fuck you."  (Id. at ¶ 25.)  Then, in response to Gomez's order to widen his stance, Plaintiff took an exaggerated stance by spreading his legs about six to eight feet apart and stated, "Fuck you" and "why don't you just suck my dick?"  (Id. at ¶ 26.)

Gomez determined, due to Plaintiff's behavior, Plaintiff should not be allowed in the chapel and ordered him to submit to handcuffs.  (Id. at ¶ 29.)  As Gomez attempted to place Plaintiff's left hand behind his back, Plaintiff suddenly jerked his arm out of Gomez's grasp and struck Gomez's chest with his elbow.  (Id. at ¶ 30.)  Sazo yelled for Plaintiff to get down.  (Id. at ¶ 31.)  An incident alarm was announced.  (Id. at ¶ 32.)  Gomez held Plaintiff's left wrist and physically forced Plaintiff to the ground by placing his right hand on Plaintiff's left shoulder and pushing Plaintiff down.  (Id. at ¶ 34.)  As Plaintiff was forced to the ground, Gomez fell down on top of him and lost control of Plaintiff's left wrist.  (Id. at ¶¶ 34–35.)  After Plaintiff was taken to the ground, his hands were both underneath his body.  (Id. at ¶ 36.)

Busby responded to the alarm and saw Plaintiff on the ground on his stomach.  (Id. at ¶ 37.) Busby stood behind Gomez to provide coverage for the other officers.  (Id. at ¶ 38.)  Gomez ordered Plaintiff to place his hands behind his back.  (Id. at ¶ 39.)  Instead, Plaintiff rocked from side to side to resist the officers.  (Id.)  Sazo and Weiss ordered Plaintiff to submit to handcuffs.  (Id. at ¶¶ 40, 41, 42.)  Gomez straddled Plaintiff's legs, trying to grab Plaintiff's right arm and bring it behind Plaintiff's back to secure him in handcuffs.  (Id. at ¶ 43.)  Weiss knelt by Plaintiff's left side and grabbed Plaintiff's left shirt sleeve to pull Plaintiff's arm out from under his body.  (Id. at ¶ 44.) Plaintiff continued to resist.  (Id. at ¶¶ 45, 48.)  Eventually, Weiss was able to gain control of Plaintiff's left wrist and force it against Plaintiff's back and Gomez was able to gain control of

Plaintiff's right wrist and the two officers handcuffed Plaintiff.  (Id. at ¶¶ 46, 47.)  Gray responded to the alarm and saw Plaintiff on the ground while Gomez and Weiss placed Plaintiff in handcuffs. (Id. at ¶ 51.)

Busby and Gray did not use any force on Plaintiff.  (Id. at ¶¶ 52, 54.)

After Plaintiff was secured in handcuffs, medical staff arrived and cleared Plaintiff, then Busby and Gray escorted Plaintiff to a holding cell in medical.  (Id. at ¶¶ 55, 56.)  Plaintiff's only documented injury was a minor scratch on the head that did not require treatment.  (Id. at ¶ 60.)

After medical, Plaintiff was escorted by two officers to Administrative Segregation; Johnson observed the escort. (Id. at ¶¶ 63, 64.)  The escorting officers pressed Plaintiff up against the wall in the hallway, but Plaintiff claims it did not hurt and he "did not even feel it."  (Id. at ¶¶ 64, 65, 66.)

### 3.    Plaintiff's Evidence Submitted on Opposition

Plaintiff opposes Defendants' motion in a four-page opposition, which is signed under the penalty of perjury, and seeks to support his opposition with the evidence addendum previously described.  (ECF Nos. 89, 92, 93.)  The first two pages of the opposition include numbered paragraphs, which the Court construes to be Plaintiff's statement of disputed facts.  (ECF No. 89 at 1–2); Thomas, 611 F.3d at 1150; Jones, 393 F.3d at 923; Covington, 123 Fed. App'x at 740.  In this section, Plaintiff presents the following disputed facts:

- Plaintiff states he was beaten by Gomez, Weiss, Sazo, and Gray.  (ECF No. 89 ¶ 1.)
- Plaintiff asserts he suffered "more damage than a scratch," and that the excessive force video recorded by CCI supports this fact.  (Id. at ¶ 3.)
- Plaintiff disputes that he ever struck Gomez, and argues the jury verdict in the related state court criminal case acquitting Plaintiff of the charges of battery on an officer and obstruction support this fact.  (Id. at ¶¶ 4, 8, 10.)

Plaintiff also submitted a CD containing the excessive force video filmed at CCI.  (ECF No. 92.)  The timestamp in the video indicates it was filmed on June 1, 2017, at 11:52 a.m., the morning after the use of force incident occurred.  The start of the video pans across Plaintiff seated with his hands handcuffed behind his back, then to an officer seated at a desk, then back to Plaintiff.  The

16

remainder of the video consists of close-up footage of Plaintiff's body, highlighting various injuries. Among the marks clearly visible to this Court from the video, Plaintiff's left shoulder, upper arm, and back area is reddened, and the top of the shoulder appears scraped; Plaintiff has multiple bloody/dark red and swollen areas on the left side of his face, brow, and side of head, and the right side of his forehead; there appears to be bruising on Plaintiff's left side of the body and redness at the upper chest and stomach areas; and some scrapes/redness around his left knee.

### C.   Discussion

Defendants move for summary judgment on the bases that: (1) the force used by Defendants was reasonable, (2) Plaintiff's injuries from the takedown do not support a claim for excessive force, (3) Defendants Johnson, Gray, Sazo and Busby did not use any force, (4) any force used during Plaintiff's escort was *de minimis*, and (5) Defendants are entitled to qualified immunity. (ECF No. 84-1.) The Court addresses each argument in turn.

#### 1.   Defendants' Waiver Arguments

As an initial matter, however, the Court must address Defendants' arguments raised with respect to Plaintiff's opposition and "disputed facts." Defendants argue in their reply briefing that Plaintiff fails to create a dispute of material fact to prevent summary judgment because he submitted no evidence in opposition to their motion, he failed to respond to Defendants' statement of undisputed facts as required by Local Rule 260(b), and through the opposition's failure to address all of Defendants' arguments, Plaintiff conceded those arguments. (ECF No. 90.) Defendants' arguments are without merit.

As the Court has noted, the Ninth Circuit requires courts to accord *pro se* civil rights inmate litigants additional leniency that exempts them from the rule that ordinary *pro se* litigants, like other litigants, must comply strictly with the summary judgment rules. Thomas, 611 F.3d at 1150. Therefore, Plaintiff's failure to submit a statement of disputed facts pursuant to the requirements set forth in Local Rule 260 is not construed as a concession of his opposition. See also Martinez v. Stanford, 323 F.3d 1178, 1182 (9th Cir. 2003) ("A motion for summary judgment cannot be granted simply because the opposing party violated a local rule"). Similarly, the Ninth Circuit has held that verified pleadings and motions are admissible to oppose summary judgment. Jones, 393 F.3d at

923; Covington, 123 Fed. App'x at 740; Johnson, 134 F.3d at 1399–1400.  Thus, as the Court has noted, Plaintiff's verified complaint, and verified oppositional brief are treated as opposing affidavits on summary judgment (in addition to the evidence submitted by Defendants with their briefing — namely, Plaintiff's deposition testimony and discovery responses — which may also be considered).

Finally, the Court rejects Defendants' contention that Plaintiff conceded arguments merely by failing to address them in opposition, as the Court must apply a different standard of review. See Martinez, 323 F.3d at 1184 (district court erred in granting summary judgment based on inmate's failure to file opposition).  When a summary judgment motion is unopposed, a district court "cannot base the entry of summary judgment on the mere fact that the motion is unopposed, but rather must consider the merits of the motion."  Leramo v. Premier Anesthesia Med. Grp., No. CV F 09-2083 LJO JTL, 2011 WL 2680837, at *8 (E.D. Cal. Jul. 8, 2011), aff'd, 514 Fed. App'x 674 (9th Cir. 2013) (quoting U.S. v. One Piece of Real Prop., etc., 363 F.3d 1099, 1101 (11th Cir. 2004)); see also Fonseca, 374 F.3d at 846 (district court abused its discretion by excluding some evidence even though defendant had waived any objection).  Thus, the Ninth Circuit requires that an unopposed motion for summary judgment may be granted only after court determines that there are no material issues of fact.  Cristobal v. Siegel, 26 F.3d 1488, 1494–95 & n. 4 (9th Cir. 1994). The Court "is not required to comb the record to find some reason to deny a motion for summary judgment."  Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotations and citation omitted); see also N. Am. Specialty Ins. Co. v. Royal Surplus Lines Ins. Co., 541 F.3d 552, 558 (5th Cir. 2008) (if no factual showing is made in opposition to a motion for summary judgment, the district court is not required to search the record sua sponte for a triable issue of fact).  However, a district court must still "determine . . . whether the moving party has shown itself to be entitled to judgment as a matter of law."  Leramo, 2011 WL 2680837, at *8 (quoting Anchorage Assocs. v. V.I. Bd. of Tax Rev., 922 F.2d 168, 175 (3rd Cir. 1990)); Martinez, 323 F.3d at 1184 (evidence directly contradicting officers' declarations on excessive force factors was contained in inmate's deposition transcript submitted with unopposed summary judgment motion, thus demonstrating genuine issues of material fact existed).  Accordingly, the Court shall

18

1    not recommend summary judgment based on purported concessions of arguments, but shall review

2    the parties' evidence and pleadings to determine whether a disputed issue of fact exists.

3            2.     <u>Excessive Force Claims</u>

4         To prevail on a valid claim under § 1983, a plaintiff must prove that the conduct complained

5    of was committed by a person acting under color of state law, and that this conduct deprived a

6    person of rights, privileges, or immunities secured by the Constitution or the laws of the United

7    States.  <u>See</u> <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981); <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S.

8    658, 690–95 (1978); <u>Rizzo v. Goode</u>, 423 U.S. 362, 370–71 (1976).  As noted above, Plaintiff

9    asserts a violation of his Eighth Amendment right against use of excessive force.  The parties do

10    not dispute that Defendants were acting under color of state law at the relevant time.  Therefore,

11    the issue is whether any material disputes of fact exist as to whether Defendants violated Plaintiff's

12    Eighth Amendment rights.

13         The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments

14    Clause of the Eighth Amendment.  <u>Hudson v. McMillian</u>, 503 U.S. 1, 5 (1992) (citations omitted).

15    For claims arising out of the use of excessive physical force, the issue is "whether force was applied

16    in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause

17    harm."  <u>Wilkins v. Gaddy</u>, 559 U.S. 34, 37 (2010) (per curiam) (citing <u>Hudson</u>, 503 U.S. at 7)

18    (internal quotation marks omitted); <u>Furnace v. Sullivan</u>, 705 F.3d 1021, 1028 (9th Cir. 2013).  In

19    determining whether the use of force was wanton and unnecessary, the Court looks to "(1) the

20    extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship

21    between that need and the amount of force used; (4) the threat reasonably perceived by the

22    responsible officials; and (5) any efforts made to temper the severity of a forceful response."

23    <u>Furnace</u>, 705 F.3d at 1028–29 (quoting <u>Martinez</u>, 323 F.3d at 1184) (citing <u>Hudson</u>, 503 U.S. at 6–

24    7).  While <i>de minimis</i> uses of physical force generally do not implicate the Eighth Amendment,

25    significant injury need not be evident in the context of an excessive force claim, because "[w]hen

26    prison officials maliciously and sadistically use force to cause harm, contemporary standards of

27    decency always are violated."  <u>Hudson</u>, 503 U.S. at 6–7 (quoting <u>Whitley v. Albers</u>, 475 U.S. 312,

28    327 (1986)).

1    Further, excessive force cases often turn on credibility determinations, and "[the excessive

2  force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw

3  inferences therefrom." Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005) (en banc)

4  (quoting Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002)); see also Avina v. U.S., 681 F.3d 1127,

5  1130 (9th Cir. 2012) (same). Therefore, "summary judgment or judgment as a matter of law in

6  excessive force cases should be granted sparingly." Smith, 394 F.3d at 701 (quoting Santos, 287

7  F.3d at 853). The Ninth Circuit has "held repeatedly that the reasonableness of force used is

8  ordinarily a question of fact for the jury." Liston v. Cnty. of Riverside, 120 F.3d 965, 976 n.10 (9th

9  Cir. 1997) (citations omitted).

10    **a.    Use of Force During the Takedown**

11    Defendants contend only Gomez and Weiss used any force with respect to the takedown.

12  (ECF No. 84-1 at 10.) Defendants contend Gomez and Weiss's use of force was necessary to

13  subdue Plaintiff and gain compliance, and was therefore reasonable. (Id. at 8–9.) Defendants

14  maintain the use of force was reasonable because Plaintiff, a high-security inmate, arrived at the

15  chapel in an angry mood, refused to comply with Gomez's orders to conduct a search or to submit

16  to handcuffs, struck Gomez in the chest, and resisted the officers' attempt to place him in handcuffs

17  on the ground. Defendants' statement of facts describes a volatile situation in which the officers

18  needed to subdue a belligerent and aggressive Plaintiff whilst surrounded by ten to twenty other

19  high-security inmates. Thus, they argue the amount of force used on Plaintiff was reasonable and

20  proportionate to his disruptive and aggressive behavior.

21    But material facts supporting Defendants' argument are in dispute. Importantly, Plaintiff

22  disputes ever striking Gomez. (See Pl. Dep. 73:10—76:23 (testimony that striking Gomez would

23  have been impossible);[7] see also ECF No. 89 ¶ 4 (averment that Plaintiff did not strike Gomez); id.

24  at 3 (same); ECF Nos. 28, 33 (Plaintiff's acquittal of criminal charges of battery by prisoner and

25

26  [7] Defendants submitted excerpts of Plaintiff's December 13, 2019 deposition in support of their "undisputed statement
of facts." (ECF No. 84-3.) Upon comparison with the original deposition transcript, however, it appears to the Court
that some of the passages from Plaintiff's testimony were excerpted in a way that placed the testimony out of context
27  or were selectively omitted from Defendants' motion for summary judgment. Accordingly, while the Court generally
refers to the parties' exhibits by their ECF pagination, it shall refer to the portions of Plaintiff's deposition transcript
28  referenced herein by the pagination identified in the original deposition transcript lodged with the Court.

obstruction/resist officer).)  Plaintiff also disputes Defendants' contention that Gray and Sazo did not use force on him.  (See, e.g., Pl. Dep. 85:9—87:22, 91:12—97:9 (testimony that Gray twisted Plaintiff's arm and punched him and Sazo twisted Plaintiff's leg and punched him).)  The amount of force used is also vastly disputed, as Plaintiff testifies to being slammed to the ground and punched by Gomez and the responding officers (id. at 80–110) but Defendants deny ever punching Plaintiff (ECF No. 84-4 ¶ 15, ECF No. 84-5 ¶ 14, ECF No. 84-8 ¶ 16, and ECF No. 84-10 ¶ 11). And Plaintiff disputes that he was still feeling upset by what had happened at the RVR hearing at the time that he lined up to attend Ramadan.  (See Pl. Dep. 57:20—58:3.)  Moreover, the use of force did not occur immediately after Plaintiff's initial outburst about the RVR hearing, but after he got back in line to be searched, behind five or six other inmates, and was "eventually" called by Gomez to be searched.  (Id. at 59:16–20, 60:6–16, 64:2–5.)

Plaintiff also disputes Defendants' other facts.  For example, Plaintiff avers that Gomez repeatedly ordered him to widen his stance and he attempted to comply with Gomez's orders (Id. at 64:10—65:14, 67:3–5, 69:3—70:17, 71:25—72:9), that he did not resist the officers but reflexively tried to protect himself while being beaten on the ground (id. at 78:24—97:9), that the officers did not order Plaintiff to submit to handcuffing until after they finished beating him (id. at 71:22–24, 110:5–12, 112:19—113:7), and that Plaintiff complied with the officers' orders to submit to handcuffing once he was ordered to do so (id. at 110:5–12).

In sum, Defendants' account of the alleged use of force during the takedown is entirely different from Plaintiff's.  Drawing all reasonable inferences in the light most favorable to Plaintiff and believing his evidence, as the Court must on summary judgment, Anderson, 477 U.S. at 255; Comite de Jornaleros de Redondo Beach, 657 F.3d at 942, Plaintiff's evidence supports a series of events in which Gomez slammed Plaintiff to the ground in response to, at most, verbal insults; and thereafter, several officers beat Plaintiff on the ground while he passively defended himself.

Defendants' argument that summary judgment should be granted on the excessive force claim because no injuries were documented, and Plaintiff's injuries are therefore *de minimis* (ECF No. 84-1 at 9–10) is also unavailing.  "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts.  An inmate who is gratuitously beaten by guards does not lose

1    his ability to pursue an excessive force claim merely because he has the good fortune to escape

2    without serious injury." Wilkins, 559 U.S. at 38.  As the Court has noted, "[t]he absence of serious

3    injury is . . . relevant to the Eighth Amendment inquiry, but does not end it."  Hudson, 503 U.S. at

4    7.

5            Here, the Court finds the use of force video plainly refutes Defendants' argument that the

6    force used on Plaintiff was *de minimis* or that there were no documented injuries.  However, even

7    notwithstanding the video evidence, Plaintiff presented testimonial evidence that he was slammed

8    to the ground despite not striking Gomez, and was then punched repeatedly, had his head and face

9    pushed into the ground, and had his arms and legs twisted before ever being ordered to submit to

10   handcuffing.  On this record, a material dispute exists as to whether the amount of force used on

11   Plaintiff was reasonable in light of the circumstances.  These factual disputes, all of which require

12   a trier of fact to make credibility determinations, preclude a dispositive finding at the summary

13   judgment stage on Plaintiff's excessive force claim.  Defendants' motion for summary judgment as

14   to Plaintiff's excessive force claim against Gomez, Weiss, Gray, and Sazo, therefore, must be

15   denied.

16           **b.    Plaintiff's Claims Against Johnson and Busby**

17           Defendants argue summary judgment is appropriate as to Plaintiff's claims against Johnson

18   and Busby because these Defendants did not participate in the use of force incident.  (ECF No. 84-

19   1 at 10–11.)  Plaintiff does not dispute that Johnson and Busby did not directly use force against

20   him; instead, he claims "they just sat there and watched."  (Pl. Dep. 34:11–23.)

21           A prison official who does not himself use force may nevertheless violate the Eighth

22   Amendment if he has a reasonable opportunity to intervene in other officials' use of excessive force

23   but does not do so.  Robins v. Centinela State Prison, 19 Fed. App'x. 549, 551 (9th Cir. 2001)

24   (quoting Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995)); see also Buckner v. Hollins,

25   983 F.2d 119, 123 (8th Cir. 1993) (defendant's failure to intervene in order to stop plaintiff's

26   beating would provide basis to conclude that defendant violated plaintiff's Eighth Amendment

27   rights).  In a failure to intervene case, "the question whether a defendant had a realistic chance to

28   intercede will turn on such factors as the number of officers present, the relative placement, the

1  environment in which they acted, the nature of the assault, and a dozen other considerations."

2  Figueroa v. Mazza, 825 F.3d 89, 107 (2d Cir. 2016).

3        Here, because the Court has determined a disputed issue exists as to whether the force used

4  by Gomez, Weiss, Gray, and Sazo was reasonable, the issue of whether Johnson and Busby had the

5  opportunity to intervene also cannot be resolved at the summary judgment stage.  Soremekun, 509

6  F.3d at 984.  Plaintiff has presented evidence that Johnson and Bubsy were supervising sergeants

7  very close in proximity to the other officers at the time of the takedown.  A reasonable jury could

8  find that after Gomez's takedown, Johnson and Bubsy could have taken some action that would

9  have prevented further harm.  See O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988) (defendant

10 who observed officer strike plaintiff liable for failing to intervene thereafter because he was alerted

11 to the need to protect the plaintiff from further abuse); see also Lanigan v. Vill. of E. Hazel Crest,

12 Ill., 110 F.3d 467, 478 (7th Cir. 1997) ("Whether an officer had sufficient time to intervene or was

13 capable of preventing the harm caused by the other officer is generally an issue for the trier of fact

14 unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise.").

15 Accordingly, Defendants' motion for summary judgment as to Plaintiff's failure to intervene claim

16 against Johnson and Bubsy must be denied.

17        **c.     Use of Force During the Escort**

18        As noted, the complaint asserts that, during Plaintiff's escort to Administrative Segregation

19 after the takedown incident, a non-party officer used excessive force on him while Johnson

20 observed the escort (again failing to intervene).  Defendants move for summary judgment on this

21 excessive force claim on the basis that Plaintiff's subsequent testimony shows the use of force was

22 de minimis.  (ECF No. 84-1 at 10–11.)

23        As the Court has noted, "[w]hat is necessary to show sufficient harm for purposes of the

24 Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at

25 issue . . . ."  Hudson, 503 U.S. at 8.  "The objective component of an Eighth Amendment claim is .

26 . . contextual and responsive to contemporary standards of decency."  Id. (internal quotation marks

27 and citations omitted).  The malicious and sadistic use of force to cause harm always violates

28 contemporary standards of decency, regardless of whether or not significant injury is evident.  Id.

at 9.  However, not "every malevolent touch by a prison guard gives rise to a federal cause of action."  Id.  This is because the Eighth Amendment excessive force standard examines "*de minimis* uses of physical force," not *de minimis* injuries.  Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002).

Here, while Plaintiff initially asserts an excessive force claim relating to the escort in his complaint, he provides subsequent testimony that he did not believe an excessive use of force had occurred.  Indeed, addressing the allegation in his complaint that he was "slammed" against a wall, Plaintiff rejects that characterization during his deposition, stating the officer actually "pretty much just placed me [against the wall]."  (Pl. Dep. 136:9—137:2.)  See also Nelson v. City of Davis, 571 F.3d 924, 927–28 (9th Cir. 2009) (citing Radobenko v. Automated Equip. Corp., 520 F.2d 540 (9th Cir. 1975)) (on sham affidavit rule, favoring deposition testimony, where party "has been examined at length" over conflicting affidavit of same party to determine no disputed fact existed).

Construing the facts in Plaintiff's favor, the evidence establishes that, while escorting Plaintiff down a narrow hallway to Administrative Segregation, the officers made a comment about Plaintiff disrespecting their sergeant, and then one of them pushed Plaintiff against a glass window in the hallway.  However, Plaintiff testified that the officer "didn't use . . . a lot of force," that the amount of force used "[couldn't] have caused any type of damage," and that "[t]o be honest, I didn't even feel it.  I laughed at him."  (Pl. Dep. 134:12—137:18.)  On these facts, the Court concludes that no reasonable juror would find that this push against the wall was applied with anything more than a relatively small amount of force.  See, e.g., Royal v. Knight, No. 1:09-cv-01407-BAM (PC), 2013 WL 6835188 (E.D. Cal. Dec. 20, 2013) (summary judgment entered for the defendant on excessive force claim based on a single *de minimis* shove that did not result in injury); Washington v. Duncan, No. C 05-2775 WHA (PR), 2011 WL 2020703 (N.D. Cal. May 24, 2011) (summary judgment entered for the defendant based on an excessive force claim that he shoved plaintiff against a fence causing plaintiff to bounce backwards).  Furthermore, on this record, the Court finds no reasonable jury would find that the force used during the escort — at which Plaintiff himself did not take offense, but rather "laughed" — was "of a sort repugnant to the conscience of mankind." Hudson, 503 U.S. at 9–10; Wilkins, 559 U.S. at 37–38.  Therefore, a reasonable jury would not dispute that the use of force used by the escorting officers was *de minimis*.  Anderson, 477 U.S. at

251–52.  Absent a finding of any use of excessive force, there was no action for Johnson to intervene to prevent.  Accordingly, the Court finds summary judgment as to the escort claim is warranted.

       3.    <u>Qualified Immunity</u>

       Alternatively, Defendants argue they should be granted qualified immunity because their use of force was reasonable to secure Plaintiff under the circumstances; specifically, where Plaintiff was "combative[,] . . . belligerent and aggressive, using foul language and refusing to comply with officers' orders," and where Plaintiff "struck Officer Gomez."  (ECF No. 84-1 at 12.)

       Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Mueller v. Auker</u>, 700 F.3d 1180, 1185 (9th Cir. 2012) (quoting <u>Messerschmidt v. Millender</u>, 565 U.S. 535 (2012)) (internal quotation marks omitted); <u>see also</u> <u>Behrens v. Pelletier</u>, 516 U.S. 299, 311–12 (1996) (qualified immunity may provide immunity from certain claims and not reach all claims).  The doctrine "gives government officials breathing room to make reasonable but mistaken judgments" and "protects 'all but the plainly incompetent or those who knowingly violate the law.'"  <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731 (2011) (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)).  Qualified immunity is an affirmative defense; the burden of pleading it rests with the defendant.  <u>Crawford-El v. Britton</u>, 523 U.S. 574, 586–87 (1998).

       A qualified-immunity analysis requires determining: (1) whether facts alleged, taken in the light most favorable to the injured party, show the defendants' conduct violated a constitutional right; and (2) whether the right was clearly established.  <u>Lacey v. Maricopa Cnty.</u>, 693 F.3d 896, 915 (9th Cir. 2012) (en banc) (citing <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001)).  Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009).

       "[S]ummary judgment based on qualified immunity is improper if, under the plaintiff's version of the facts, and in light of the clearly established law, a reasonable officer could not have

1   believed his conduct was lawful." <u>Schwenk v. Hartford</u>, 204 F.3d 1187, 1196 (9th Cir. 2000) (citing

2   <u>Grossman v. City of Portland</u>, 33 F.3d 1200, 1208 (9th Cir. 1994)).   The Supreme Court has

3   "repeatedly told courts . . . not to define clearly established law at a high level of generality."

4   <u>Mullenix v. Luna</u>, 577 U.S. 7, 12 (2015) (alteration in original) (quoting <u>Ashcroft</u>, 563 U.S. at 742).

5   "The dispositive question is 'whether the violative nature of *particular* conduct is clearly

6   established.' " <u>Id.</u> (emphasis in original) (quoting <u>al-Kidd</u>, 563 U.S. at 742).   "[T]his inquiry 'must

7   be undertaken in light of the specific context of the case, not as a broad general proposition.' "

8   <u>Brosseau v. Haugen</u>, 543 U.S. 194, 198 (2004) (quoting <u>Saucier</u>, 533 U.S. at 201).

9        The court has already determined that under Plaintiff's version of events, the allegations

10   demonstrate violations of Plaintiff's rights under the Eighth Amendment; the first prong is therefore

11   resolved in Plaintiff's favor.

12        Furthermore, with respect to whether there was a clearly established right, the law at the

13   time was clear that force used sadistically and maliciously for the very purpose of causing harm

14   violated the Eighth Amendment.  <u>Whitley</u>, 475 U.S. at 312, 320–21 (1986).  Defendants argue that

15   using force that appears reasonable under the circumstances faced by an officer is not a clearly

16   established constitutional violation.  (ECF No. 84-1 at 12.)  But Defendants' argument is contingent

17   upon a construction of the disputed facts in Defendants' favor.  If Plaintiff's facts are believed by

18   the jury, Defendants acted with the specific purpose of punishing Plaintiff and causing him harm.

19   A reasonable officer would not have believed that it was lawful to slam to the ground a non-

20   combative inmate whilst he was following the officer's orders and then join with multiple officers

21   to gratuitously beat the inmate for a minute before ordering him to submit to handcuffing.

22        In sum, because Defendants have not met their burden of demonstrating the absence of a

23   genuine issue of material fact with respect to the issues regarding the need, the degree, and the

24   motivation for the force used, summary judgment based on qualified immunity is inappropriate.

25   <u>See</u> <u>Adickes</u>, 398 U.S. at 157; <u>see also</u> <u>Act Up!/Portland v. Bagley</u>, 988 F.2d 868, 873 (9th Cir.

26   1993) (if there is a genuine dispute as to the "facts and circumstances within an officer's

27   knowledge," or "what the officer and claimant did or failed to do," summary judgment is not

28   appropriate).   Accordingly, summary judgment based on Defendants' argument that they are

entitled to qualified immunity should not be granted.

**V.**

**RECOMMENDATION**

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1.      Defendants' motion to strike Plaintiff's surreply (ECF No. 94) be GRANTED in part and DENIED in part as follows:

    a.      Defendants' motion be GRANTED as to Plaintiff's surreply (ECF No. 91);

    b.      Defendants' motion be DENIED as to Plaintiff's evidence addendum (ECF Nos. 92, 93); and

    c.      Plaintiff's unauthorized surreply to the motion for summary judgment (ECF Nos. 91) be STRICKEN; and

2.      Defendant's motion for summary judgment (ECF No. 84) be GRANTED in part and DENIED in part as follows:

    a.      Defendants' motion be DENIED as to Plaintiff's excessive force and failure to intervene claims against Defendants arising from the takedown;

    b.      Defendants' motion be GRANTED as to Plaintiff's excessive force and failure to intervene claim against Johnson arising from the escort; and

    c.      Defendants' motion be DENIED on the basis of qualified immunity.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **twenty-one (21) days** of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 23, 2022**

_____
UNITED STATES MAGISTRATE JUDGE